Seth M. Lehrman (SBN 178303)
seth@epllc.com
**EDWARDS POTTINGER LLC**
425 North Andrews Avenue, Suite 2
Fort Lauderdale, FL 33301
Telephone : 954-524-2820
Facsimile:  954-524-2822

Joshua H. Eggnatz (Fla. Bar No.: 0067926)
JEggnatz@JusticeEarned.com
**EGGNATZ | PASCUCCI**
7450 Griffin Road., Suite 230
Davie, FL 33314
Telephone: 954-889-3359
Facsimile: 954-889-5913
*(pro hac vice forthcoming)*

Attorneys for Plaintiff
Betty Moore through her
attorney in fact Alisha Gore

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### EASTERN DIVISION

| | |
|---|---|
| BETTY MOORE through her attorney in fact ALISHA GORE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>LEGION AUTO PROTECTION SERVICES, WALCO FUNDING, LLC AND CARGUARD ADMINISTRATION, INC.,<br><br>Defendants. | CASE NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, BETTY MOORE through her attorney in fact ALISHA GORE (hereinafter "Plaintiff"), brings this class action under Rule 23 of the Federal Rules of Civil Procedure against Defendants Legion Auto Protection Services ("Legion"), WalCo Funding, LLC ("WalCo Funding") and CarGuard Administration, Inc. ("CarGuard") (collectively "Defendants") for their violations of the Telephone

-1-

Consumer Protection Act, 47 U.S.C. § 227 (hereinafter "the TCPA"), and the regulations promulgated thereunder.  In support, Plaintiff alleges as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiff brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of Defendants in negligently or willfully contacting Plaintiff on Plaintiff's home telephone line, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"), thereby invading Plaintiff's privacy, and for violation of the Electronic Funds Transfer Act, 12 C.F.R. § 1005.7(b)(7) ("EFTA").  Plaintiff alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

2.    Plaintiff and each Class Member received unwanted telephone robocalls from Defendants. Plaintiff and Class members' phone numbers were registered with the National Do-Not-Call Registry.  This lawsuit challenges all calls that were sent by Defendants to Plaintiff and Class Members from approximately August 1, 2017, through the date of filing this class action complaint.

3.    The TCPA was designed to prevent calls like the ones described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012).

4.    Additionally, the FCC has explicitly stated that the TCPA's prohibition on automatic telephone dialing systems "encompasses both voice calls and text calls to wireless numbers including, for example, short message service (SMS) calls." U.S.C.A. Const. Amend. 5; Telephone Consumer Protection Act of 1991, § 3(a), 47 U.S.C. § 227(b)(1)(A)(iii). *Kramer v. Autobytel, Inc.,* 759 F. Supp. 2d 1165 (N.D. Cal. 2010).

-2-

1    5.    In enacting the TCPA, Congress intended to give consumers a choice as to

2  how creditors and telemarketers may call them and made specific findings that

3  "[t]echnologies that might allow consumers to avoid receiving such calls are not

4  universally available, are costly, are unlikely to be enforced, or place an inordinate

5  burden on the consumer.   TCPA, Pub.L. No. 102–243, § 11. Toward this end,

6  Congress found that:

7           [b]anning such automated or prerecorded telephone calls to the home,
         except when the receiving party consents to receiving the call or when
8        such calls are necessary in an emergency situation affecting the health
         and safety of the consumer, is the only effective means of protecting
9        telephone consumers from this nuisance and privacy invasion.

10  *Id.* at § 12; *see also Martin v. Leading Edge Recovery Solutions, LLC*, 2012

11  WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional findings on

12  TCPA's purpose).

13              **JURISDICTION AND VENUE**

14    6.    This Court has federal question subject matter jurisdiction pursuant to 28

15  U.S.C. § 1331 and 47 U.S.C. § 227.

16    7.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2),

17  because a substantial part of the events or omissions giving rise to the claims in this

18  case occurred in this District, including Defendants' transmission and marketing

19  decisions regarding the unlawful and unwanted calls to Plaintiff which emanated

20  from this District and their other operations in this District.

21    8.    The Court has personal jurisdiction over Defendants because they conduct

22  business in this state, maintain principal places of business in this state, market their

23  services within this state, and/or have availed themselves to the jurisdiction of this

24  state by placing calls, either directly or on their behalf, to Plaintiff and Class

25  Members from this state and engaging in the unlawful telemarketing at issue in this

26  state.

27

28

CLASS ACTION COMPLAINT

## PARTIES

9.   Plaintiff's domicile is in Tabor City, North Caroline.

10.   Legion is a California company, located at 14071 Peyton Drive, Unit 905, Chino Hills, California 91709.

11.   WalCo Funding is a Delaware limited liability company, located at 440 N. Wells Street, Suite 410, Chicago, Illinois 60654. Based upon information and belief, WalCo Funding has a principal place of business in Woodland Hills, California.

12.   CarGuard is an Arizona company, located at 6991 E. Camelback Road, Suite C309, Scottsdale, Arizona, 85251.

13.   Defendants, directly, individual, jointly, and/or in concert with each other, or through other persons, entities or agents acting on their behalf, created, approved, conspired to, agreed to, contributed to, authorized, assisted with, ratified, and/or otherwise caused all the wrongful acts and omissions, including the dissemination of the unsolicited calls that are the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

14.   At all times relevant, Plaintiff, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153 (39).

15.   Plaintiff registered her home telephone number ending in 3267 on the National Do-Not-Call ("DNC") Registry on or about August 1, 2003.

16.   Defendants, Legion and WalCo Funding are citizens of the State of California, and at all times mentioned herein were corporations and "persons," as defined by 47 U.S.C. § 153(39).

17.   At all times relevant Defendants conducted business, either directly and/or through their agents, in the State of California, within this judicial district.

18.   Defendants are companies that engage in the marketing, sale, and finance of vehicle service contracts to consumers across the country.

19.  Defendant, Legion, is a sales agent, vendor, and/or dealer for the product and services promoted by Defendants through the use of the unlawful telemarketing campaign.

20.  Defendant, WalCo Funding, is a payment plan provider for vehicle services contracts that are issued by Defendant CarGuard and sold by Legion through illegal telemarketing, including the telemarketing calls placed to Plaintiff and class members.

21.  Defendant Walco Funding represents that it maintains "partnerships" with "direct marketers" like Defendant Legion.

22.  Defendant, CarGuard, is the administrator and is the party responsible for administering the benefits of the vehicle service contracts that Legion promotes through its illegal telemarketing.

23.  To increase the sales volume and profits of their products and services, Defendants and/or their authorized sales agents repeatedly called thousands of consumers using an automatic telephone dialing system in violation of the TCPA.

24.  Defendants utilize autodialed telemarketing calls to market and advertise Defendants' business, including at least two (2) calls to Plaintiff between approximately February and March 2021.

25.  On each call, noticeable silence was heard for several seconds until the call was eventually transferred to a live agent.

26.  Defendants and/or their authorized sales agents concealed or "spoofed" their actual phone number from Plaintiff and Class Members to trick Plaintiff and Class Members into answering calls that they believed were from a familiar number.

27.  On each of the calls, an agent eventually identified themselves as Legion Auto Protection Services calling to sell and promote Defendants' vehicle service contract product and services.

28.  The calls were transmitted to Plaintiff's home phone number ending in 3267, and within the time period that is relevant to this action.

29.   At no time did Plaintiff provide Plaintiff's home phone number to Defendants for the purpose of receiving telemarketing calls, nor did Plaintiff consent to receive such calls in any respect.

30.   Plaintiff is the subscriber and a user of the 3267 Number and is financially responsible for phone service to the 3267 Number, including the costs and usage incurred as a result of the unlawful calls made to Plaintiff by Defendants.

31.   Plaintiff Betty Moore is 76 years of age.  Ms. Moore has appointed her granddaughter Alisha Gore as her attorney-in-fact to protect her interests, in part, through pursuing this litigation against the Defendants to stop unwanted telephone calls that prey on the elderly and to recover her hard-earned monies that have been wrongfully taken from her.

32.   The content of the calls made to Plaintiff and the Class Members show that they were for the purpose of marketing, advertising, and promoting Defendants' business and services to Plaintiff as part of an overall joint telemarketing strategy.

33.   Defendants placed the calls to Plaintiff and Class Members regardless of whether these individuals had provided express written consent or had registered their phone numbers on the National Do Not Call Registry.

34.   These calls were not for emergency purposes as defined by 47 U.S.C. § 227(b)(1)(A)(i).

35.   Plaintiff did not provide Defendants or their agents prior express consent to receive these messages to her telephone; therefore, the unsolicited messages violated 47 U.S.C. § 227(b)(1).

36.   Defendants are and were aware that they are transmitting unsolicited telemarketing calls to Plaintiff and other consumers without their prior express consent.

37.   Plaintiff was damaged by Defendants' unsolicited telephone calls.

38.  On one of the unsolicited calls, Legion's sales representative duped Betty Moore into purchasing a vehicle service contract for a vehicle that she does not even own or possess.

39.  During this call, Legion obtained Plaintiff's personal banking information from her under false pretenses, including her bank account number and routing number. Upon information and belief, Legion failed to fully and properly instruct Plaintiff on how her banking information would be used, Defendants' intent to start automatic recurring debits from Plaintiff's account, and Plaintiff's right to cancel recurring debits from her account.

40. Defendants also failed to instruct Plaintiff on how to terminate the recurring debit charges in the written contract sent to her. The authorization for bank account direct debit sent to Plaintiff is below:

**Payment Option 2: Authorization for Bank Account Direct Debit**
Purchaser hereby authorizes Seller (and its Assignee) to instruct Purchaser's financial institution described below to make the payments due under this Agreement, in the amounts and on the dates disclosed under Payment Schedule, from the account listed below, by electronic automatic debit of Purchaser's checking or savings account. This authority will remain in effect until such time as the all amounts due under this Agreement are paid in full.

41.  Plaintiff was damaged because she was required to part with her money and/or spending power to obtain a vehicle service contract that had absolutely no value or benefit to her because she did own or possess the vehicle that is the subject of the supposed contract, and she had to undertake the burdens associated with all efforts to rescind the contract and to stop recurring debit charges to her bank account.

42.  Plaintiff had no relationship with Defendants prior to these illegal phone calls.

**LIABILITY FOR CALLS PLACED BY THIRD PARTIES**

43.  To the extent one or more Defendants outsourced their illegal robocalling, they are still liable for calls that violate the TCPA.

-7-

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

44.   On May 9, 2013, the FCC determined that this was not a basis for avoiding liability within a Declaratory Ruling that held that sellers may not avoid liability by outsourcing telemarketing:

> [A]llowing the seller to avoid potential liability by outsourcing its telemarketing activities to unsupervised third parties would leave consumers in many cases without an effective remedy for telemarketing intrusions.  This would particularly be so if the telemarketers were judgment proof, unidentifiable, or located outside of the United States, as is often the case.  Even where third-party telemarketers are identifiable, solvent, and amenable to judgment limiting liability to the telemarketer that physically places the call would make enforcement in many cases substantially more expensive and less efficient, since consumers (or law enforcement agencies) would be required to sue each marketer separately in order to obtain relief.  As the FTC noted, because "[s]ellers may have thousands of "independent" marketers, suing one or a few of them is unlikely to make a substantive difference for consumer privacy.

*May 2013 FCC Ruling*, 28 FCC Rcd at 6588 (¶37) (internal citations omitted).

45.   Moreover, the May 2013 FCC Ruling rejected a narrow view of TCPA liability, including the assertion that a seller's liability requires a finding of formal actual agency and immediate direction and control over third parties who place a telemarketing call.  Id. at 6587 n. 107.

46.   The May 2013 FCC Ruling states that called parties may obtain "evidence of these kinds of relationships… through discovery, if they are not independently privy to such information."  Id. at 6592-593 (¶46).  Moreover, evidence of circumstances pointing to apparent authority on behalf of the telemarketer "should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent."  Id. at 6593 (¶46).

47.   Even if Defendants did not personally place the TCPA-violating calls, Defendants are still liable for the telemarketers' actions if they took steps to cause

-8-

or approve the calls to be made, or if the calls were made pursuant to the Defendants' actual authority, apparent authority and/or ratification of the calls, and because they were acting as a joint enterprise or in concert with each other.

48. Defendants authorized their telemarketers to generate prospective customers. Defendants utilized a systematic telemarketing campaign whereby robocalls were placed in a seamless process to make it appear to Plaintiff and Class Members that Defendants were calling them directly from Defendants' the telemarketing department.

49. Defendants hired, permitted, and enjoyed the benefits of the mass robocalling.

50. The FCC has explained that its "rules generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." See In re Rules & Regulations Implementing the TCPA, CC Docket No. 92-90, Memorandum Opinion and Order, 10 FCC Rcd 12391, 12397 (13) (1995).

51. The FCC stated within their January 4, 2008 ruling, that a company on whose behalf a telephone call is made bears the ultimate responsibility for any violations.

52. The May 2013 FCC Ruling held that, even in the absence of evidence of a formal contractual relationship between the seller and the telemarketer, a seller is liable for telemarketing calls if the telemarketer "has apparent (if not actual) authority" to make the calls. 28 FCC Rcd at 6586 (34).

53. Defendants requested and sought from its telemarketers to solicit particular target customer profiles on a mass scale.

54. Defendants specified the criteria of potential customers that would be most profitable for Defendants to sell to after they had been robocalled.

55. Defendants integrated their systems with their marketers so they could access the records of people with whom they executed contracts.

CLASS ACTION COMPLAINT

56.   On information and belief, Defendants had access to the sales and customers generated by the illegal robocalling at issue in this case.

57.   The May 2013 FCC Ruling also clarifies circumstances under which a telemarketer has apparent authority.

58.   Defendants authorized their marketers to generate prospective customers for them.

59.   Plaintiff reasonably believed that telemarketers who called her had received permission and instructions to conduct activity on behalf of Defendants.

60.   Further, Defendants ratified the unlawful calls by knowingly accepting business that originated through illegal robocalls.

61.   Despite being on notice of frequent violations, Defendants continue to work with companies that perform illegal robocalling.

62.   By accepting these contacts and relying on them to execute contracts, Defendants "manifest[ed] assent or otherwise consent[ed]… to act" on behalf of its telemarketers, as described in the Restatement (Third) of Agency.

63.   Defendants further ratified the TCPA violations by knowingly accepting the benefit of large volume of sales, despite that these sales were generated illegally.

64.   Defendants took advantage of the violations by having their salespeople solicit the prospective customers while turning a blind eye to the way the potential customer was identified.

## CLASS ACTION ALLEGATIONS

65.   Plaintiff brings this class action under Rule 23(a),(b)(2), and(b)(3) of the Federal Rules of Civil Procedure on behalf of herself and of a similarly situated "Class" or "Class Members" defined as:

> **Do Not Call Registry Class:** All people in the United States who from four years prior to the filing of this action (1) were called by or on behalf of Defendants; (2) more than one time within any 12-month period; (3) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of

-10-

selling Defendants' products and services; and (5) for whom Defendants claim (a) it did not obtain prior express written consent, or (b) it obtained prior express written consent in the same manner as Defendant claims it supposedly obtained prior express written consent to call the Plaintiff.

**Unauthorized Payment Class:**  All people in the United States who from one year prior to the filing of this action (1) Legion or WalCo Funding subjected to one or more automatic recurring debit charges from a bank account for (2) a vehicle service contract sold by Legion.

66.  Excluded from the Class are Defendants, and any subsidiary or affiliate of Defendants, and the directors, officers and employees of Defendants or their subsidiaries or affiliates, and members of the federal judiciary.

67.  This action has been brought and may properly be maintained as a class action against Defendants pursuant to Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable. Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that any Class should be expanded or otherwise modified.

68.  **Numerosity**: At this time, Plaintiff does not know the exact number of Class Members, but among other things, given the nature of the claims and that Defendant's conduct consisted of standardized telemarketing campaign calls placed to telephone numbers, Plaintiff believes, at a minimum, there are greater than forty (40) Class Members.  Plaintiff believes that the Class is so numerous that joinder of all members of the Class is impracticable and the disposition of their claims in a class action rather than incremental individual actions will benefit the Parties and the Court by eliminating the possibility of inconsistent or varying adjudications of individual actions.

69.   Upon information and belief, a more precise Class size and the identities of the individual members thereof are ascertainable through Defendant's records, including, but not limited to Defendant's calls and marketing records.

70.   Members of the Class may additionally or alternatively be notified of the pendency of this action by techniques and forms commonly used in class actions, such as by published notice, e-mail notice, website notice, fax notice, first class mail, or combinations thereof, or by other methods suitable to this class and deemed necessary and/or appropriate by the Court.

71.   **Existence and Predominance of Common Questions of Fact and Law**: There is a well-defined community of common questions of fact and law affecting the Plaintiff and members of the Class. Common questions of law and/or fact exist as to all members of the Class and predominate over the questions affecting individual Class members. These common legal and/or factual questions include, but are not limited to, the following:

    a.  Whether Plaintiff and Class Members registered a phone number on the National Do Not Call Registry;

    b.  Whether, within the four years prior to the filing of this Complaint, Defendants or their agents called a Class member two or more times to a phone number registered on the National Do Not Call Registry;

    c.  How Defendants obtained the numbers of Plaintiff and Class members;

    d.  Whether Defendants engaged in telemarketing when they initiated the calls which are the subject of this lawsuit;

    e.  Whether the calls made to Plaintiff and Class Members violate the TCPA and its regulations;

    f.  Whether Defendants willfully or knowingly violated the TCPA or the rules prescribed under it;

-12-

g.  Whether Defendants Legion and/or WalCo Funding made or caused recurring debit charges to be made to Plaintiff and Class Members without their authorization and/or without instructing them on how to terminate such recurring debit charges;

h.  Whether Defendants Legion and/or WalCo Funding violated the EFTA or the rules prescribed under it;

i.  Whether Plaintiff and the members of the Class are entitled to statutory damages, treble damages, and attorney fees and costs for Defendants' acts and conduct;

j.  Whether Plaintiff and members of the Class are entitled to a permanent injunction enjoining Defendants from continuing to engage in its unlawful conduct; and

k.  Whether Plaintiff and the Classes are entitled to any other relief.

72.  One or more questions or issues of law and/or fact regarding Defendants' liability are common to all Class Members and predominate over any individual issues that may exist and may serve as a basis for class certification under Rule 23(c)(4).

73.  **Typicality**: Plaintiff's claims are typical of the claims of the members of the Class. The claims of the Plaintiff and members of the Class are based on the same legal theories and arise from the same course of conduct that violates the TCPA.

74.  Plaintiff and members of the Class each received at least one telephone call, advertising the Defendants' products or services, which Defendants placed or caused to be placed to Plaintiff and the members of the Class.

75.  **Adequacy of Representation:** Plaintiff is an adequate representative of the Class because Plaintiff's interests do not conflict with the interests of the members of the Class. Plaintiff will fairly, adequately and vigorously represent and protect the interests of the members of the Class and has no interests antagonistic to

-13-

the members of the Class. Plaintiff has retained counsel competent and experienced in litigation in the federal courts, TCPA litigation, and class action litigation.

76. **Superiority**: A class action is superior to other available means for the fair and efficient adjudication of the claims of the Class. While the aggregate damages which may be awarded to the members of the Class are likely to be substantial, the damages suffered by individual members of the Class are relatively small. As a result, the expense and burden of individual litigation makes it economically infeasible and procedurally impracticable for each member of the Class to individually seek redress for the wrongs done to them. Plaintiff does not know of any other litigation concerning this controversy already commenced against Defendants by any member of the Class. The likelihood of the individual members of the Class prosecuting separate claims is remote. Individualized litigation would also present the potential for varying, inconsistent or contradictory judgments, and would increase the delay and expense to all parties and the court system resulting from multiple trials of the same factual issues. In contrast, the conduct of this matter as a class action presents fewer management difficulties, conserves the resources of the parties and the court system, and would protect the rights of each member of the Class. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

77. **Class-Wide Injunctive Relief and Rule 23(b)(2):** Moreover, as an alternative to or in addition to certification of the Class under Rule 23(b)(3), class certification is warranted under Rule 23(b)(2) because Defendants have acted on grounds generally applicable to Plaintiff and members of Class, thereby making appropriate final injunctive relief with respect to Plaintiff and Class Members as a whole.  Plaintiff seeks injunctive relief on behalf of Class Members on grounds generally applicable to the entire Class in order to enjoin and prevent Defendants' ongoing violations of the TCPA, and to order Defendants to provide notice to them

of their rights under the TCPA to statutory damages and to be free from unwanted calls.

**COUNT I**
**VIOLATION OF THE TCPA**
**47 U.S.C. § 227**
**(Against Legion on Behalf of Plaintiff and the Do Not Call Registry Class)**

78. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 77 of this Complaint as though fully stated herein.

79. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

80. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[1]

81. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

82. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

---

[1] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

83.   Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

84.   Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

85.   As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

86.   To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief against Defendant, Legion, individually and jointly, as set forth in the Prayer for Relief below.

**COUNT II**
**VIOLATION OF THE TCPA**
**47 U.S.C. § 227**
**(Against WalCo Funding on Behalf of Plaintiff and the Do Not Call Registry Class)**

87.   Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 77 of this Complaint as though fully stated herein.

88.   The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

-16-

CLASS ACTION COMPLAINT

89.   47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[2]

90.   47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

91.   Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

92.   Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

93.   Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

94.   As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. §

---

[2]   *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

95.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief against Defendant, WalCo Funding, individually and jointly, as set forth in the Prayer for Relief below.

**COUNT III**
**VIOLATION OF THE TCPA**
**47 U.S.C. § 227**
**(Against CarGuard on Behalf of Plaintiff and the Do Not Call Registry Class)**

96.    Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 77 of this Complaint as though fully stated herein.

97.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

98.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."[3]

99.    47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."

---

[3]    *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

100. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

101. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

102. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above.

103. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

104. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief against Defendant, CarGuard, individually and jointly, as set forth in the Prayer for Relief below.

// Intentionally left blank //

-19-

**COUNT IV**
**VIOLATION OF THE EFTA**
**12 C.F.R. § 1005.7(b)(7)**
**(Against WalCo Funding on Behalf of Plaintiff)**

105. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 77 of this Complaint as though fully stated herein.

106. The EFTA's implementing regulation, 12 C.F.R. § 1005.7(b)(7), states that financial institutions must provide "a summary of the consumer's right to stop payment of a preauthorized electronic fund transfer and the procedure for placing a stop-payment order, as provided in § 1005.10(c)" as an initial disclosure.

107. According to 12 C.F.R. § 1005.2(h)(i), a financial institution is any institution "that directly or indirectly holds an account belonging to a consumer, or that issues an access device and agrees with a consumer to provide electronic fund transfer services."

108. 12 C.F.R. § 1005.10(c) provides that a consumer may stop electronic fund transfers "by notifying the financial institution orally or in writing at least three business days before the scheduled date of the transfer."

109. 12 C.F.R. § 1005.10(c) also provides that if a financial institution requires written confirmation of stop-payment orders, the institution "shall inform the consumer of the requirement and provide the address where confirmation must be sent when the consumer gives the oral notification."

110. By providing Plaintiff an electronic fund transfer service, Defendant is a financial institution pursuant to 12 C.F.R. § 1005.2(h)(i).

111. Defendant violated 12 C.F.R. § 1005.7(b)(7) by failing to initially disclose to Plaintiff and all other similarly situated class members their right to stop payment of electronic fund transfers during the electronic fund transfer set up process.

112. Defendant violated 12 C.F.R. § 1005.7(b)(7) because the payment options provided to Plaintiff failed to provide a summary of the consumer's right to stop payment pursuant to 12 C.F.R. § 1005.10(c).

CLASS ACTION COMPLAINT

113. As a result of Defendant's conduct as alleged herein, Plaintiff and all other similarly situated class members suffered actual damages and seek to recover their actual damages and/or any statutory damages permitted under the statute.

114. Upon information and belief, Defendant's conduct was willful and knowing, including its violation of the EFTA because it knew that it had failed to instruct Plaintiff and Class Members on the manner in which they may terminate recurring debit charges.  Accordingly, Plaintiff seeks treble damages, pursuant to 47 U.S.C. § 227(c)(5), for herself and members of the EFTA Class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief against Defendant, WalCo Funding, individually and jointly, as set forth in the Prayer for Relief below.

**COUNT V**
**VIOLATION OF THE EFTA**
**12 C.F.R. § 1005.7(b)(7)**
**(Against Legion on Behalf of Plaintiff)**

115. Plaintiff incorporates by reference all of the allegations contained in paragraphs 1 through 77 of this Complaint as though fully stated herein.

116. The EFTA's implementing regulation, 12 C.F.R. § 1005.7(b)(7), states that financial institutions must provide "a summary of the consumer's right to stop payment of a preauthorized electronic fund transfer and the procedure for placing a stop-payment order, as provided in § 1005.10(c)" as an initial disclosure.

117. According to 12 C.F.R. § 1005.2(h)(i), a financial institution is any institution "that directly or indirectly holds an account belonging to a consumer, or that issues an access device and agrees with a consumer to provide electronic fund transfer services."

118. 12 C.F.R. § 1005.10(c) provides that a consumer may stop electronic fund transfers "by notifying the financial institution orally or in writing at least three business days before the scheduled date of the transfer."

119. 12 C.F.R. § 1005.10(c) also provides that if a financial institution requires written confirmation of stop-payment orders, the institution "shall inform the

consumer of the requirement and provide the address where confirmation must be sent when the consumer gives the oral notification."

120. By providing Plaintiff an electronic fund transfer service, Defendant is a financial institution pursuant to 12 C.F.R. § 1005.2(h)(i).

121. Defendant violated 12 C.F.R. § 1005.7(b)(7) by failing to initially disclose to Plaintiff and all other similarly situated class members their right to stop payment of electronic fund transfers during the electronic fund transfer set up process.

122. Defendant violated 12 C.F.R. § 1005.7(b)(7) because the payment options provided to Plaintiff failed to provide a summary of the consumer's right to stop payment pursuant to 12 C.F.R. § 1005.10(c).

123. As a result of Defendant's conduct as alleged herein, Plaintiff and all other similarly situated class members suffered actual damages and seek to recover their actual damages and/or any statutory damages permitted under the statute.

124. Upon information and belief, Defendant's conduct was willful and knowing, including its violation of the EFTA because it knew that it had failed to instruct Plaintiff and Class Members on the manner in which they may terminate recurring debit charges.  Accordingly, Plaintiff seeks treble damages, pursuant to 47 U.S.C. § 227(c)(5), for herself and members of the EFTA class.

WHEREFORE, Plaintiff respectfully requests the Court grant Plaintiff and the Class relief against Defendant, Legion, individually and jointly, as set forth in the Prayer for Relief below.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and in favor of the class, against Defendants for:

    a. An order certifying this case as a class action, certifying Plaintiff as representative of the Class, and designating Plaintiff's counsel as Class counsel;

b. Statutory damages of $500 per call in violation of the TCPA;

c. Willful damages at $1,500 per call in violation of the TCPA;

d. A declaration that Defendants' practices described herein violate the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii);

e. An injunction prohibiting Defendants from using an automatic telephone dialing system or prerecorded messages and an artificial voice to call numbers assigned to telephones without the prior express written consent of the called party;

f. An injunction prohibiting Defendants from calling any individual whose number appears on the National Do Not Call Registry;

g. Actual damages for violations of the EFTA, 15 U.S.C. § 1693m;

h. Statutory damages for violations of the EFTA, 15 U.S.C. § 1693m;

i. Reasonable attorney's fees and costs, including such fees and costs as maybe recovered under the EFTA; and

j. Such further and other relief as this Court deems reasonable and just.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury.

DATED:  July 16, 2021          EDWARDS POTTINGER LLC


By: */s/ Seth M. Lehrman*
    Seth M. Lehrman


    Joshua H. Eggnatz (Fla. Bar No.: 0067926)
    EGGNATZ⎮PASCUCCI

    Attorneys for Plaintiff
    Betty Moore through her attorney in fact
    Alisha Gore

-23-